## Laine v. Commonwealth.

May 30, 1941.

King & Flournoy, O. P. Roper and J. D. Standard for appellant.

Hubert Meredith, Attorney General, and Wm. F. Neill, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing.

The appellant, G. J. Laine, hereinafter referred to as defendant, was convicted of embezzling money from a corporation while acting as its secretary and treas-

urer, an offense denounced by Kentucky Statutes, Section 1202, and his punishment was fixed at confinement in the penitentiary for one year. On this appeal he is seeking to reverse the judgment because: 1. The general demurrer to the indictment should have been sustained; 2. incompetent and prejudicial evidence was admitted against him; 3. his motion to set aside the swearing of the jury and to continue the case should have been sustained; 4. a directed verdict should have been given in his favor; 5. the court erroneously instructed the jury.

In 1935, Bart Gooch, Oscar Duncan, and defendant, Laine, incorporated the Gooch Distributing Company, each subscribing to 150 of the 450 shares of its capital stock. The business of the corporation was selling liquor, and as Duncan had been previously convicted of a violation of the liquor law, he placed his stock in 1936 in the name of Gooch and Laine and their wives, in order that his former conviction would not militate against the corporation obtaining what is referred to in the record as a basic permit. During the month of Nov., 1936, the corporation's business amounted to $433,142.63 and the proof shows that on Nov. 18, 1936, ticket No. 11202, representing a cash sale of $3,146.50 was not entered on the cash book, but was entered on a book required by the United States Government to be kept to show the amount of liquor the corporation sold.

The indictment charged Laine with embezzling this $3,146.50. His defense is that Gooch, president of the corporation, directed him not to enter this ticket, or invoice, on the cash book, thereby seeking to evade the payment of income taxes; that Gooch took in cash from the safe his one-third of this invoice, saying that defendant and Duncan could do likewise; that a good many similar invoices were handled in this manner, all of which were not entered on the books of the company, but were kept in a "little book." Duncan, who had been vice-president of the corporation until he transferred his stock in 1936, but who in reality continued to own one-third of its capital stock, testified for defendant and fully corroborated him, admitting that he (Duncan) had received more than $6,000 representing his one-third of the invoices not entered in the cash book but entered in the "little book." Gooch, who testified only in rebuttal, denied he received one-third of this $3,146.50 invoice, or

that he gave instructions or directions to defendant not to enter it on the company's cash book.

The minutes of a meeting of the directors held on January 6, 1936, show a resolution that not less than 10% of the total net profits of the corporation each year be added to surplus, and the remaining 90% be equally divided among Gooch, Duncan and defendant. Duncan testified that his dividend in December 1936, amounted to $24,000, and that on January 26, 1937, he and defendant sold their interests in the corporation to Gooch. An audit made of the company's books in 1937 showed a shortage of $19,000, and it appears from questions asked by the Commonwealth Attorney on the cross-examination of Duncan that the United States Income Tax Department made a claim against Gooch for $149,000 for income tax alleged to be due on account of errors in report made by the company to the government.

The indictment charged defendant with embezzling "the sum of $3146.50 in lawful money of the United States of America". The demurrer appears to have been based on the theory that this was not a sufficient description of the funds alleged to have been embezzled. It is not necessary for the indictment to specify the coin, number, denomination or kind of money embezzled, sec. 135, Criminal Code of Practice; Clary v. Com., 163 Ky. 48, 173 S. W. 171; Stephens v. Com., 188 Ky. 824, 224 S. W. 364.

Defendant complains that H. L. King, bookkeeper for the corporation was allowed to testify that certain records he had received from a bank did not show that a deposit of $3,146.50 had been made in the bank. As King had no connection with the bank and was not the keeper of its records, he was not a competent witness as to what its records showed. But later, Gill, an employee of the bank and custodian of its records, testified this deposit had not been made. Therefore, King's incompetent testimony was not in the least prejudicial to defendant and under sec. 340, Criminal Code of Practice was harmless error.

C. P. Moore, a certified public accountant, who audited the company's books, testified that they did not show this item had been deposited in the bank or entered on the books of the company. It is argued that

this testimony violates the rule that mercantile books can only be admitted as affirmative evidence and not to establish the negative of a proposition, citing Lawhorn v. Carter, 11 Bush 7, 74 Ky. 7; Clary v. Com., 163 Ky. 48, 173 S. W. 171. We do not deem it necessary to go into a discussion as to the competency of Moore's testimony, since defendant testified that this item had not been deposited in the bank or entered on the books of the corporation.

The Commonwealth in cross-examining several character witnesses who testified for the defendant, asked would they have testified as to his good reputation if they had heard (in some instances, if they had known) of defendant's being short in his accounts with one Hancock, and if they had heard (in some instances, known) of his making a false affidavit concerning income tax reports of the company. It is competent for the Commonwealth on cross-examination of character witnesses to ask them if they have heard of such charges being made against the defendant, but it is only competent for the purpose of testing the recollection or information of the witnesses relative to defendant's general reputation; and where there is an objection to such testimony, or a motion to limit its effect, the court should admonish the jury that it is admitted for the sole purpose of testing the accuracy or credibility of the witness and not as substantive evidence of defendant's guilt. McCreary v. Com., 158 Ky. 612, 165 S. W. 981; Clark v. Com., 165 Ky. 472, 177 S. W. 251; Copley v. Com., 184 Ky. 185, 211 S. W. 558; Wright v. Com., 267 Ky. 441, 102 S. W. (2d) 376.

On another trial if such cross-examination is indulged in by the Commonwealth, the witnesses will be asked if they have heard (not known) of such charges against defendant, and would it have any effect upon their testimony. And if objection is made, or there is a motion to limit the effect of such testimony, the court will admonish the jury that it is not substantive testimony, but is introduced for the sole purpose of testing the accuracy and candor of the character witnesses.

After Duncan testified for defendant there was a warrant issued charging him with embezzlement which was served in the courtroom by the sheriff. Defendant thereupon moved the court to discharge the jury on the

ground that Duncan was arrested in the presence of the jury immediately after he left the stand. The uncontradicted affidavit of the sheriff shows that while he served this warrant on Duncan in the courtroom it was not in the presence of the jury, but was to one side and that he seated himself beside Duncan and quietly advised him he had a warrant for his arrest; that at the time another witness was testifying; that he often moves about the courtroom during a trial talking to people; that he is certain none of the jurors knew of Duncan's arrest. In the circumstances, we think the court properly overruled defendant's motion to discharge the jury, and we are convinced that Duncan's arrest was not in the presence of the jury, and they knew nothing about it. However, the trial court and the Commonwealth Attorney should use the greatest care to never allow a witness to be arrested in the courtroom in the presence or hearing of the jury as it is not difficult to see how such an arrest could be greatly prejudicial to the defendant.

Based on the ground that defendant in reality owned one-third of the company's capital stock at the time it is alleged he embezzled this money, and on the further ground that the corporation was operated as a partnership, it is insisted that the court should have directed a verdict in defendant's favor, since one cannot be guilty of embezzlement where he owns part of, or an interest in the funds taken. Pierce v. Com., 210 Ky. 465, 276 S. W. 135, cited by appellant, does hold that a partner cannot be guilty of the offense of embezzling partnership funds, as a requirement of the offense is that the property taken shall be that of another; and when a partner takes partnership funds, he is interested therein and they are not wholly the property of another. Reference to the annotations in 17 A. L. R. 982 shows this to be the uniform rule. But the weakness of defendant's position is that he was not a partner in the Gooch Distributing Company, but a stockholder. There is a vast distinction between an owner, or the beneficial owner, of one-third of a corporation's capital stock and the owner of a one-third interest in a partnership; therefore, Pierce v. Com. has no application here. Even when one becomes the owner of all the stock of a corporation he does not in law become the legal owner of the corporation's property,

and cannot ignore the existence of the corporation and deal with its property as his own without action of the corporation, 18 C. J. S. 1193, Corporation, sec. 513; City of Louisville v. McAteer, 81 S. W. 698; 26 Ky. Law Rep. 425, 1 L. R. A., N. S. 766; Com. v. Muir, 170 Ky. 435, 186 S. W. 194.

Defendant cites Goodwin v. Smith, 66 S. W. 179, 23 Ky. Law Rep. 1810, and White v. Boreing, 45 S. W. 242, 20 Ky. Law Rep. 210, but they do not support his position that the owner of one-third of the stock of a closed corporation bears the relation of partner to the other two stockholders. The Goodwin case holds that members of a partnership, which was converted into a corporation without notice to an employee of the partnership, were liable to such employee in a suit for personal injuries; the theory being that such employee receiving no notice of the partnership's conversion into a corporation, was justified in assuming he was still employed by the partnership. White v. Boreing is to the effect that the three sole stockholders of a corporation may make a contract among themselves as to the disposition of the corporate property. We are cited to no case which holds a stockholder of a corporation bears the relation of partner to the other stockholders or has a partnership interest in the property of the corporation, and we have found none.

But there is substance in the last complaint of the defendant that the court erred in its instruction wherein the jury in effect were told to acquit him if they believed from the evidence "all of the owners of stock in said corporation consented to the taking and conversion of said money by the defendant". As stated above, Duncan's stock had been transferred to Gooch and wife and defendant and wife. This transfer was merely formal and Duncan continued his connection with the corporation and considered himself the owner of one-third of the stock, and was so considered by Gooch and Laine. Indeed, a dividend of $24,000 was paid Duncan by the corporation in December, 1936, although the records of the company at that time showed no stock in his name. There was no testimony heard on the trial as to whether or not Mrs. Gooch and Mrs. Laine consented to Laine's conversion of this money, and the case was tried on the sole issue of whether or not Gooch consented thereto. Therefore, the third in-

struction instead of submitting to the jury whether or not all the owners of the corporate stock consented to defendant taking and converting this money should have submitted whether or not Gooch consented thereto. On another trial the words "all the stockholders of said corporation" will be stricken from the third instrution, and in lieu thereof, the court will insert, "Bart Gooch, the president of said cororation".

On account of the error appearing in the third instruction, the judgment is reversed.